## Case No. 8,305.

### LEVY COURT OF WASHINGTON COUNTY v. RINGGOLD.

[2 Cranch, C. C. 659.]¹

Circuit Court, District of Columbia. May 13, 1826.²

MUNICIPAL CORPORATIONS — RIGHT OF COUNTY TO FINES AND PENALTIES OF CITY OF WASHINGTON — RIGHT OF DISTRICT ATTORNEY AND MARSHAL TO ORDER WRITS OF CAPIAS AD SATISFACIENDUM — LIABILITY OF MARSHAL FOR FINES COLLECTED.

1. The levy court of Washington county, D. C., are only entitled to a moiety of the fixed fines, penalties, and forfeitures accruing under the adopted statutes of Maryland; not of the common-law discretionary fines, nor of those imposed under original acts of congress.

2. The attorney of the United States for the District of Columbia is not bound, by the 2d section of the Maryland act of 1795, c. 74, to order writs of ca. sa. for fines, &c., on the application of the marshal; nor can the marshal order them without the authority of the district attorney, who has a discretion in that respect, which the marshal has no right to control.

¹ [Reported by Hon. William Cranch, Chief Judge.]
² [Affirmed in 5 Pet. (30 U. S.) 451.]

3. The marshal, D. C., is not liable for fines which he has no means of collecting.

4. There is no act of congress which imposes upon the attorney of the United States for the District of Columbia the special duties imposed upon the attorney-general of Maryland and his deputies by the statutes of Maryland.

5. The levy court of Washington county is not bound to repair the gaol erected by the United States in that county.

6. The marshal had no right to expend the funds of the levy court of Washington county in the repairs of the gaol without their order.

At May term, 1825, Mr. Marbury, having given previous notice, obtained a rule in behalf of the levy court of Washington county, D. C., upon Tench Ringgold, marshal of the District of Columbia, to show cause "why judgment should not be rendered against him in favor of the said levy court for the sum of $2,266.51, which said sum of money" they claim against him for their proportion of the fines, penalties, and forfeitures, "collected, or which ought to have been collected" by him and paid to the said levy court under the provisions of the 2d section of the act of congress, supplementary to the act concerning the District of Columbia. Upon the appearance of the marshal, THE COURT ordered the auditor of the court to ascertain and report what moneys, on account of fines imposed by this court, have been collected by the marshal since the month of December, 1819; what fines since that period remain uncollected, and whether persons from whom the same were to have been collected, were insolvent, and which of them; and whether the marshal has applied any of the moneys collected by him, as aforesaid, towards the repairs of the gaol, or towards any other public uses, and to what amount; and to state any other matters specially which either party may request. On the 5th of January, 1826, the auditor reported,

| | |
|---|---|
| That half of the whole amount of fines imposed, was................. | $2,267 66 |
| That half of the amount to be deducted for pardons and fines not collected, was ................. | 1,660 17 |
| That the amount received by the marshal, was ................... | $ 607 49 |
| That the marshal should be credited for repairs of the gaol ................... $814 95 | |
| And for money paid to the judge of the orphans' court, &c.............. 157 00 | 971 95 |
| Leaving a balance due to the marshal of................... | $364 46 |

To this report Mr. Marbury, for the levy court, excepted. "1st, Because the auditor has allowed credit to the defendant in cases where no execution issued against the party fined. 2d, Because the auditor has allowed credit to the defendant for money expended by him on the gaol of Washington county and for money paid to the judge of the orphans' court for the same county, without

proof of any authority from the levy court to make such expenditures and payments." The 2d section of the act of congress of the 3d of March, 1801 (2 Stat. 115), supplementary to the act concerning the District of Columbia, provides, that "all fines, penalties, and forfeitures accruing under the laws of the states of Maryland and Virginia, which by adoption have become the laws of this district, shall be recovered with costs, by indictment or information in the name of the United States, or by action of debt in the name of the United States and the informer; one half of which fine shall accrue to the United States, and the other half to the informer; and the said fines shall be collected by, or paid to the marshal; and one half thereof shall be by him paid over to the board of commissioners hereinafter estab-lished," (that is, the levy court,) "and the other half to the informer; and the marshal shall have the same power regarding their collection, and be subject to the same rules and regulations as to the payment thereof, as the sheriffs of the respective states of Maryland and Virginia are subject to in relation to the same."

Mr. Marbury, in support of his first exception to the auditor's report, contended that the 2d section of the act of the 3d of March, 1801 (2 Stat. 115), made the marshal liable to all the obligations of the sheriffs in Maryland, in regard to the collection of fines; and liable to the same summary process which is provided by the Maryland act of November, 1797, c. 43. By the Maryland act of November, 1795, c. 74, § 7, the sheriffs of that state were "answerable for all fines, penalties, and forfeitures imposed on the inhabitants of their respective counties by the judgment of any court" within that state, "where no execution shall issue for recovery of such fine, penalty, or forfeiture, unless the said sheriffs shall respectively make it appear, to the satisfaction of the treasurer, that the party on whom such fine, penalty, or forfeiture was imposed was insolvent, and unable to pay the same." Under this act, Mr. Marbury contended that the marshal was liable for the fines in all cases where no execution for them had issued, unless he proved the insolvency of the parties fined. By the second section of the same act it was made the duty of the attorney-general of Maryland to order an execution to issue for a fine, penalty, or forfeiture, on the application of the sheriff. Under this section Mr. Marbury contended that the marshal was bound to apply to the district attorney to order an execution, in every case where the fine was not paid, and the party not insolvent; and that it was the duty of the district attorney to order it. As to the second exception, Mr. Marbury contended that the levy court was not bound to repair the gaol, and had no right to apply the money of the levy court to that object without their order.

Mr. Lear, contra.

The marshal had no authority to order an execution, nor to require the district attorney to order it, and therefore ought not to be liable in cases where no execution issued. The levy court have a right only to one half of the fines, penalties, and forfeitures accruing under the adopted statutes of Maryland, not of the common-law fines, nor fines under acts of congress. The repairs of the gaol were made by the order of this court. The county is as much bound to repair the gaol as to repair the roads, or to pay the judge of the orphans' court, which it has always done; and the half of the fines was given to the levy court for that purpose. The marshal cannot be liable where he is in no default.

Mr. Key, in reply.

The marshal is bound to use due diligence, and is prima facie liable for all the fines, but may discharge himself by showing the parties to be insolvent, and perhaps by showing that he applied to the district attorney for executions, but did not get them.

CRANCH, Chief Judge (THRUSTON, Circuit Judge, contra). Under the act of congress of the 3d of March, 1801, § 2 (2 Stat. 115), the levy court of Washington county, who represent, or, in fact, are the commissioners therein named, claim, of the marshal, one half of all fines, penalties, and forfeitures imposed, assessed, or recovered in this court, from the beginning of December term, 1819, to October term, 1821, inclusive, amounting, as they say, to $2,266.51. This amount is understood as including one half of the fines imposed by the court for common-law offences, the amount of which is discretionary, and of those discretionary fines which are imposed by the court, under acts of congress, (as in the cases of larceny, manslaughter, &c.,) and of fines, penalties, and forfeitures fixed by acts of congress for certain offences, as well as the fixed fines, penalties, and forfeitures accruing under the adopted statutes of Maryland. But we think that the levy court are entitled only to the latter.

The laws of Maryland and Virginia, which were adopted by the act of congress of the 27th of February, 1801 (2 Stat. 103), included many penal laws, and the modes of recovering the fines, penalties, and forfeitures accruing thereon, were various. In some cases they were to be recovered by indictment; in some, by information; in some, by action of debt; in some, by seizure; in some, by conviction before a justice of the peace; in some, before the county courts; in some, before the general courts, &c. In some cases, the fine, penalty, or forfeiture was recovered for the use of the state; in some, for the use of the county; in some, for the use of particular literary institutions; and in some for

the use of the poor, &c. It was evident that much perplexity and embarrassment would arise in the execution of those laws, unless some precise mode of recovery and appropriation of those fines, &c., should be provided. To effect this purpose, and to designate the person who should receive or collect the fines, the second section of the act of the 3d of March, 1801, was enacted. As it regards the fines, penalties, and forfeitures accruing under the laws of Maryland, we think it refers only to those fines, penalties, and forfeitures which are alluded to in the act of Maryland, 1795, c. 74, entitled, "An act for the more speedy and effectual recovery of fines, penalties, and forfeitures," and those, we think, were such as were imposed and fixed by statute, and not those discretionary fines which the courts of law imposed for misdemeanors and other common-law offences. We are induced to think so for the following reasons: The preamble of that act (1795, c. 74) declared that doubts were entertained, whether, under the existing laws of the state, a writ of ca. sa. could be issued "for the recovery of any fine, penalty, or forfeiture;" whereas, the act of February, 1777, c. 13, entitled "An act for the more speedy and effectual recovery of common-law fines and forfeited recognizances," § 2, expressly gives a writ of ca. sa. for fines imposed by any court of record for any common-law offences, which, in the preamble of the same statute, are described as "the common-law fines imposed on public delinquents." And, by another statute of the same session (chapter 6), and passed on the same day (20th April, 1777), entitled "An act to direct in what manner fines, forfeitures, penalties, and amerciaments shall be applied," it is enacted, that "all fines, penalties, and forfeitures directed and imposed by any of the laws now in force, and all fines, penalties, and forfeitures which shall hereafter be inflicted or imposed, and no mode of recovery or application shall be directed, shall and may be recovered in manner following," namely: where the sum did not exceed £5, the same might be recovered with costs, in the name of the state and the informer, before any one justice of the peace in the county; and where the sum exceeded £5, by indictment, in the name of the state; or by action of debt, in the name of the state and of the informer, in which it shall be sufficient to allege "that the defendant is indebted to the state and the informer, in the fine, penalty, or forfeiture, by the act directed and imposed, whereby action accrued, without setting out the special matter." When the recovery should be before a justice of the peace, he might either commit the offender, or, by warrant, direct the constable to levy the fine on the offender's goods and chattels; and was required to pay one half to the informer and the other to the sheriff, who was to pay it into the treasury. If recovered by indictment, the court might commit the offender till payment should be made to the sheriff; or might order execution, to levy the fine and costs on the offender's lands, goods, or chattels. If recovered by action of debt, the sheriff was to pay one half to the informer and the other to the treasurer. By the same act, no prosecution or suit should be commenced for any fine, penalty, or forfeiture unless within one year from the time of the offence committed.

Thus, it appears, that, in the same session, the legislature gave a writ of ca. sa. for common-law fines, but refused it in all cases of fines, penalties, and forfeitures; clearly discriminating, as we think, between common-law fines and those fines, penalties, and forfeitures which accrued under, or were imposed by, law, and which could be recovered by indictment or action; and the prosecution for the recovery of which could be limited by statute, and evidently showing, that, by fines, penalties, and forfeitures, they meant only those fines, penalties, and forfeitures which were prescribed by statute, and which could, in the language of the act of congress of the 3d of March, 1801 (2 Stat. 115), be correctly said to be "accruing under the laws of Maryland," and which could be recovered either by indictment or action of debt. The act of 1795, c. 74, uses the same terms, namely: "fines, penalties, and forfeitures," and provides, that, for all such, a ca. sa. may be issued, thereby placing them, in that respect, on the same ground as common-law fines, which are not named in that act. When, therefore, the act of congress uses the same terms, "fines, penalties, and forfeitures" accruing under the laws of Maryland, they must be understood as used in the same sense in which they are used in the laws of Maryland, where, we think it is evident, they mean only those fines, penalties, and forfeitures which are prescribed by the statutes of Maryland. To the half of such only do we think the levy court entitled.

The next inquiry is, how far is the marshal chargeable to the levy court for fines, penalties, and forfeitures, of that description, which have never, in fact, been received by him. Common-law fines, and fines imposed originally by acts of congress, are out of the question. By the act of Maryland, 1795, c. 74, § 2, it is made the duty of the attorney-general of Maryland, upon application of the sheriff, to order writs of ca. sa. for such fines, penalties, or forfeitures. By the 3d section, such fines, &c., are to be paid to the sheriff to whom the ca. sa. shall be directed, to wit, it authorizes the sheriff to receive the money on the ca. sa. By the 4th section, the sheriff is to have the body, on the return of the ca. sa. or pay the money. By the 5th section, the clerk of the court is to transmit to the treasurer, a list of the ca. sa.'s issued under that act, and of the sums of money which the sheriff shall have acknowledged to have received for such fines, &c. The 6th section di-

rects the sheriff to pay over the costs upon the executions, to the persons entitled to them. And the 7th enacts, "That the respective sheriffs of this state shall be answerable for all fines, penalties, and forfeitures, imposed on the inhabitants of their respective counties, by the judgment of any court within this state, where no writ of execution shall issue for the recovery of such fine, penalty, or forfeiture, unless the said sheriffs shall respectively make it appear to the satisfaction of the treasurer, that the party on whom such fine, penalty, or forfeiture was imposed, was insolvent, and unable to pay the same." The questions, arising under this act, are, 1. Whether the attorney of the United States for this district, is bound by the 2d section of the act of 1795, c. 74, which requires the attorney-general of Maryland, or his deputies, on the application of the sheriff, to order writs of ca. sa. for such fines, &c. 2. Whether the marshal can order such writs without the authority of the attorney for the district. 3. Whether the marshal can collect the fine without a writ of execution. 4. Whether he is liable for a fine which he had not the legal means of collecting, unless he shall show the offender to be insolvent; and, 5. Whether, if he be so liable, there be any person substituted for the treasurer of Maryland, to decide the fact of such insolvency.

1. The attorney of the United States, for the district, holds his office under the 9th section of the act of congress of the 27th of February, 1801 (2 Stat. 103), and is to take the oath and perform the duties required of the district attorneys of the United States. By the act of congress of 1789, c. 19, § 35 (the Judiciary Act; 1 Stat. 73), the district attorneys of the United States are to be sworn or affirmed to the faithful execution of their office; and it is made their duty "to prosecute in such district, all delinquents for crimes and offences cognizable under the authority of the United States, and all civil actions in which the United States may be concerned." There is no act of congress which imposes upon the attorney for this district, the special duties imposed upon the attorney-general of Maryland, and his deputies, by the statutes of that state. The power to prosecute all delinquents for crimes and offences, seems to include the power of ordering execution against them upon conviction. This has been the constant practice in this district; and we think that the district attorney has a discretion in that respect, which the marshal has not a right to control.

2. If the attorney has the control of the prosecution, we think the marshal has no right to order the ca. sa. without the authority of the attorney.

3. It is evident that the marshal has no power to enforce payment of the fine, &c., without execution, unless the offender be committed by the court.

4. It seems to follow, from the natural dictates of justice, that as that part of the act of Maryland which authorizes the sheriff to compel the attorney-general to order an execution, is not applicable to the marshal, the correspondent obligation of the sheriff to collect the fines, &c., at all events, (insolvency excepted,) in a case where no execution shall have issued, cannot devolve on the marshal.

5. It it were possible to think that the marshal would be liable in such a case, there is no person substituted for the treasurer of Maryland, to decide the fact of insolvency, so as to discharge the marshal, even in that case.

The next questions arising in this case are, —1. Whether the levy court is bound to repair the jail erected by the United States in this county. 2. If they are, then whether the marshal had a right to apply, to that object, the funds of the levy court in his hands, without the order or assent of that court.

The levy court was constituted by the 4th section of the act of congress of the 3d of March, 1801 (2 Stat. 115), which declares that they shall possess and exercise the same powers, and perform the same duties as the levy courts, or commissioners of counties possess and perform. By the 10th section of the act of congress of the 3d of May, 1802 (2 Stat. 193), the marshal of the District of Columbia was authorized and directed, with the approbation of the president of the United States, to cause a good and sufficient jail to be built within the city of Washington, and a sum not exceeding $8,000 was appropriated to that purpose. The act of congress of the 1st of July, 1812 (2 Stat. 771), authorized the levy court to erect and maintain a penitentiary; to straighten and repair certain roads, and to make new roads; to impose a tax on the county, (excepting the city of Washington,) not exceeding 25 cents on $100 of the real and personal property, for the aforesaid and all other general county purposes; and repeals all the then existing laws so far as they vested in the levy court a power to lay taxes; and they were exempted from all obligation to support the poor of the city of Washington; and were authorized to lay a special tax upon the other part of the county for the support of the poor of such other part. By the same act, the levy court is organized anew. The general county expenses and charges, other than for certain roads and bridges out of Georgetown and Washington City, were to be divided equally between that city and the residue of the county, and one half thereof to be paid by the city to the treasurer of the levy court; which general expenses were to be ascertained annually by that court and the city. These are all the provisions of the several acts of congress, giving powers to the levy court of Washington county. By the act of Maryland, November, 1794, c. 53, entitled "An act for the establishment and regulation of the levy court in the several counties in this state," the justices of the county are to meet and adjust the ordinary and necessary expenses of the

county, including an allowance for the poor, and roads; and may impose an assessment or rate for necessary repairs of the court-house, not exceeding £150 a year, and for necessary repairs of the county jail, not exceeding £150 a year. We do not see, in these laws, any positive obligation on the part of the levy court to repair the jail; and we think that no such obligation can be inferred, when we consider that the jail was built by the United States on their land, for the safe-keeping of their prisoners; in the execution of their laws, and of the judgments of their courts; and that it is their property, and may, by them, be converted to any other use than that of a jail. Being of opinion, therefore, that the levy court is not bound to repair the jail, we think the marshal was not authorized to expend their funds, without their authority, upon that object. The report of the auditor must be reformed according to the principles contained in this opinion, and for that purpose the cause must be referred to him, with power to take any further evidence which each party may offer, (subject to the exception of the other party,) and report to this court, so that a final order may be made in the cause.

At a subsequent term, to wit, 29th May, 1829, the auditor reported again, in conformity with the opinion of the court, and found a balance of $613.33, due from the marshal to the levy court.

Mr. Marbury, on the same day, filed exceptions to the report, 1. Because it rejected the common-law fines, and fines imposed under acts of congress. 2. Because the auditor refused to allow interest on the balance, on the ground that the marshal had, by mistake of the officers of the treasury, applied the money to the use of the United States in repairing the gaol.

These exceptions were overruled by the court, January 9th, 1830, and judgment rendered for the balance reported. Affirmed by the supreme court. 5 Pet. [30 U. S.] 451.